# United States District Court

NORTHERN DISTRICT OF GEORGIA

FILED IN CLERK'S OFFICE
U.S.D.C. Gainesville

AUG 2 3 2013

JAMES N. HATTEN, Clerk
Deputy Clerk

UNITED STATES OF AMERICA
v.

MATTHEW KLEINSMITH

CRIMINAL COMPLAINT

CASE NUMBER: 2:13-MJ-35

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about <u>November 24, 2008</u> in <u>Forsyth</u> County, in the Northern District of Georgia defendant(s) Track Statutory Language of Offense)

did devise and intend to devise a scheme and artifice defraud Ron Onorato, doing business as, Point Berkeley and Point Satellite, and did obtain money and property from Ron Onorato, doing business as, Point Berkeley and Point Satellite, by means of false and fraudulent pretenses, representations, and promises, and by the omission of material facts, knowing and having reason to believe that such pretenses, representations, and promises were false and fraudulent when made and that said omissions were of material facts, and did execute and cause to be executed said scheme and artifice to defraud by means of wire, radio, and television communications certain, signs, signals, and sounds, in interstate commerce,

in violation of Title 18, United States Code, Section(s) 1343.

I further state that I am a(n) Special Agent with the Federal Bureau of Investigation and that this complaint is based on the following facts:

See Attached Affidavit

Continued on the attached sheet and made a part hereof.    (X) Yes ( ) No

Signature of Complainant
DAVID WYLIE

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to before me, and subscribed in my presence

<u>August 23, 2013</u>                        at    <u>Gainesville, GA</u>
Date                                              City and State

J. CLAY FULLER
<u>United States Magistrate Judge</u>
Name and Title of Judicial Officer              Signature of Judicial Officer
AUSA William L. McKinnon, Jr.

AFFIDAVIT:

I, David Wylie, being first duly sworn, do hereby depose and State:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed for approximately 27 years. I am currently assigned to the FBI office in Gainesville, Georgia. My investigative responsibility includes investigating different federal crimes such as bank robbery, bank fraud, mortgage fraud and wire fraud. I have been involved in investigations relating to wire fraud and bank fraud and have executed arrest warrants relating to wire fraud and bank fraud statutes. I know the following principally based on information obtained from my investigation and from other law enforcement officers.

2. As a federal agent, I am authorized to investigate violations of laws of the United States and to execute arrest warrants issued under the authority of the United States.

3. This affidavit is being submitted for the purpose of securing a complaint and warrant for the arrest of Matthew Kleinsmith (Kleinsmith) for committing the offense of fraud by wire in violation of Title 18 United States Code, Section 1343. I have not included each and every known fact concerning this investigation; rather, I have set forth only the facts believed necessary to establish probable cause for the issuance of the requested complaint and arrest warrant. Even though I have not included every fact known to date in this investigation, I do not believe anything has been omitted that would vitiate the probable cause set forth herein.

BACKGROUND OF THE INVESTIGATION

4. By way of background, Ron Onorato (Onorato) was a real estate developer in the Atlanta, Georgia area. His company was located at 6505 Shiloh Road, Suite 303, Alpharetta, Georgia, 30005, in Forsyth County, further located in the Northern District of Georgia. Onorato had two construction projects known as Point Berkeley and Point Satellite. Construction financing for

Point Berkeley was provided by Integra Bank and Huntington Bank, both located in Ohio. In 2008, Onorato began looking for permanent financing for both projects. Onorato was introduced to Matthew Kleinsmith, owner of Park Capital Group, LLC, located in Miami, Florida. Kleinsmith told Onorato about a program he was involved with that could provide 10 to 1 financing through Caixia Bank located in Madrid, Spain. Kleinsmith stated that he had successfully closed many transactions through his connections at Caixia Bank. Kleinsmith advised Onorato that in order to obtain financing through the program at Caixia Bank, Onorato would have to pay approximately 10% down and that the down payment would be paid through Kleinsmith's company, Park Capital Group, LLC.

5. In November 2008, Kleinsmith visited Onorato's project sites and told Onorato that he would work with Onorato to obtain permanent financing because he liked both projects. Kleinsmith returned to Florida, and called Onorato to advise him that he was going to Spain during the last week of November 2008, and that if Onorato wanted to move forward with the funding plan discussed, it needed to get it done prior to his trip. Because Onorato asked for some references, Kleinsmith set up a conference call with Robert Lopez, who Kleinsmith represented to be a large developer in Florida. Onorato called Lopez. Lopez told Onorato he just closed a deal with Kleinsmith and everything went smoothly. The investigation later revealed that the call to Lopez was a deception in that the investigation established that Lopez was the brother of Kleinsmith's girlfriend, that Lopez was not a developer, and that Lopez had not closed a loan with Kleinsmith.

6. On November 24, 2008, Onorato wired $1,360,000 to Kleinsmith with the understanding he was securing financing for the Point Satellite project through Caixia Bank in Spain. Onorato wired Kleinsmith this money from his Wachovia Bank account in Georgia to Kleinsmith's Park Capital account in Coral Gables, Florida, with the understanding that he was providing a deposit for a loan from Ciaxa Bank in order to obtain financing for the Point Satellite project. Onorato talked

to Kleinsmith shortly thereafter and Kleinsmith stated that he had just returned from his trip to Spain, that everything was positive and the trip was successful, and that he promised funding in mid-January 2009. Kleinsmith told Onorato that he could also fund Onorato's Point Berkeley project.

7. On December 12, 2008, Onorato wired another $1,250,000 to Kleinsmith. This money was to provide permanent financing for the Point Berkeley construction loan. The money was wired as before, from Georgia to Florida using the same accounts.

8. On December 16, 2008, Onorato wired Kleinsmith an additional $500,000 bringing the Point Berkeley financing total to $1,750,000. The money was wired as before, from Georgia to Florida using the same accounts.

9. Onorato was interviewed on January 28, 2011. During the interview he provided details as to why he trusted Kleinsmith and why he believed he was going to obtain financing for his projects. Onorato stated that over the Thanksgiving weekend in November 2008, he was invited by Kleinsmith, to Kleinsmith's house in Cincinnati, Ohio, for a meeting. When Onorato arrived Kleinsmith took him to a $3 million dollar house with a new Ferrari in the driveway. Kleinsmith led Onorato to believe that Kleinsmith was living in the house. Kleinsmith told Onorato the Ferrari was for his father who had just retired from Proctor and Gamble and was going into business with Kleinsmith. Onorato also stated that Kleinsmith took him to an office complex he claimed was going to be his new headquarters. Onorato stated that after spending the weekend with Kleinsmith he felt comfortable wiring an additional $1,750,000 from his Wachovia account in Georgia to Kleinsmith's account in Florida. The investigation later established that Kleinsmith did not own the $3 million house as he claimed. The Ferrari was purchased with funds that Realistic Enterprises, another victim company, had paid to Kleinsmith's company to obtain financing.

10. Despite paying the above described fees to Kleinsmith to obtain financing, Onorato never obtained financing for his projects through Caixia Bank in Spain. After Onorato paid the deposits, Kleinsmith started making excuses for the funding not coming through. Kleinsmith told Onorato he had traveled to Spain and Hong Kong to get the deal through. However, the investigation later revealed that Kleinsmith did not have a passport, and therefore, could not travel internationally as he claimed that he had. On numerous occasions, Onorato asked for the money back, but kept getting excuses from Kleinsmith. Onorato advised he has never received any of the money back and has not received any type of funding. Eventually, Onorato was forced to declare bankruptcy and go out of business.

11. Kleinsmith's bank records were examined and revealed that Onorato's money came into Kleinsmith account each time it was wired. However, instead of being used for its intended purpose, the money was immediately transferred to other individuals with whom Kleinsmith had prior financial relationships. On November 24, 2008, Onorato wired transferred $1.36 million to Park Capital Group, LLC's account. At the time the Park Capital Group account had a minimal balance. The next day $1 million was transferred from the Park Capital Group account to an account held by Realistic Enterprises. On December 16, 2008, at approximately 4:16 p.m., Onorato wired transferred $500,000 to the Park Capital Group account. The same day at approximately 4:23 p.m., a wire transfer in the amount of $550,000 was sent from the Park Capital Group account to the Realistic Enterprises account. Executives at Realistic Enterprises advise that their company paid Kleinsmith $1.5 million as an advance fee to obtain financing, but the financing had never come through. Kleinsmith represented to them that their company would receive a refund if the promised financing was not obtained. When Kleinsmith did not pay the promised refund, Realistic Enterprises sued him to recover the $1.5 million that had been paid to him. The lawsuit was ongoing in November 2008, but was settled after Kleinsmith repaid

them their $1.5 million. Kleinsmith never told Onorato that he intended to use the advance fees paid by Onorato to repay Realistic Enterprises.

## CONCLUSION

12. Based on the aforementioned factual information, your affiant respectfully submits that there is probable cause to believe that Kleinsmith committed the offense of fraud by wire, in violation of Title 18, United States Code, Section 1343.